THOMAS NOBLE

*v.*

ELIZABETH TIPTON *et al.*

*Opinion filed December 20, 1905.*

1. DEEDS—*deed given to custodian but subject to recall is not delivered.* A deed enclosed in an envelope and given to a custodian to be delivered after the grantor's death, but with the reservation that the grantor retained the right to recall it, is not delivered, and is not operative as a deed though delivered by the custodian after the grantor's death.

2. WILLS—*when recital cannot be given effect of a devise.* A recital in a will referring to certain property as having been theretofore deeded, the deed to which is invalid for want of delivery, cannot be given the effect of a devise; nor does the recital aid in establishing that there was a valid delivery of the deed so as to make it operative.

3. PARTITION—*rule where one co-tenant has made improvements.* In partition, where one co-tenant has made improvements, the court should, if possible, allot to him the portion so improved without considering the value of the improvements; but if such a division cannot be made the court should allow him remuneration for increased value of the premises caused by the improvements.

4. SAME—*when provision in partition decree is erroneous.* In partition, where the defendant, in his answer and cross-bill, sets up the making of improvements while in possession of the land as the ground for insisting upon his ownership and the validity of his deed, it is error, on awarding partition, to decree that the defendant's notes, which he had given to his father for money borrowed to pay for the improvements and which were a part of the general estate, should be canceled to the extent of a certain part of the amount expended for the improvements.

APPEAL from the Circuit Court of Carroll county; the Hon. OSCAR E. HEARD, Judge, presiding.

C. L. HOSTETTER, for appellant.

RALPH E. EATON, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 22, 1904, John Noble, of Carroll county, died, leaving three sons, Thomas Noble, the appellant, John Noble and Robert Noble, and six daughters, Elizabeth Tipton, Ada Ostandere, Isabel Summerville, Anna Herrington, Maggie Fickes and Lydia McPeak, his heirs-at-law. He owned at the time of his death about 400 acres of land and personal property amounting to over $18,000, in addition to the lands known as his home farm, containing 503.56 acres, which are the subject of this controversy. He left a will, by which he disposed of all his estate, real and personal, except the home farm, and stated in the will that he had previously deeded that farm to his son Thomas Noble. He had executed a deed of the farm, dated August 24, 1897, to Thomas Noble, and the deed was in the possession of a custodian, who delivered it to the grantee a few days after the death of John Noble, and it was then put on record. On June 15, 1904, Elizabeth Tipton and Ada Ostandere, two of the appellees, filed their bill in this case against the other heirs, alleging that said deed of the home farm to Thomas

Noble was never delivered, and they prayed that the deed should be declared null and void as a cloud upon their title and that the court would partition the premises between the heirs. Thomas Noble, the appellant, answered, alleging that the deed was made, executed and delivered on the day of its date; that it was deposited with Joseph S. Miles, the cashier of the First National Bank of Mt. Carroll, to be delivered to him upon the death of his father, and that, relying upon the deed and his ownership of the premises, he had made large expenditures and improvements on the farm by the erection of valuable buildings thereon. Three of the defendants, Isabel Summerville, Robert Noble and John Noble, filed a joint answer, disclaiming any interest in the premises and alleging that their father, John Noble, gave the farm to Thomas Noble, who took possession of it; that the deed was delivered to Joseph S. Miles to be delivered to the grantee on the death of John Noble, and that it was so delivered and the farm was rightfully the property of Thomas Noble. Thomas Noble filed a cross-bill with the same allegations contained in his answer, and asked the court to declare that the deed was duly executed and delivered and barred the defendants from setting up any claim to the premises. The complainants in the original bill and three of the other heirs answered the cross-bill, denying the delivery of the deed. There was a hearing of the evidence, and the court entered a decree finding that the deed was made and acknowledged but that it was never delivered. The deed was declared null and void and a partition was ordered, and a credit of $3000 was allowed to Thomas Noble upon notes held by him as executor of his father. The cross-bill was dismissed for want of equity. From that decree Thomas Noble prosecuted an appeal to this court.

The following facts were proved at the hearing: In the spring of 1897 John Noble, then seventy-four years of age, turned his home farm over to his son Thomas Noble, the appellant, with the intention and understanding that the son

should have the farm after his death.   In order to carry out his purpose he made and acknowledged the deed in question on August 24, 1897.   The deed recited that it was made in consideration of natural love and affection, and it was attested by two witnesses.   It was not delivered at that time, and ten months later, on June 10, 1898, John Noble made his last will and testament, disposing of all his property except the home farm, which was mentioned in the will as having been deeded to his son Thomas Noble.   He took the will and the deed in question, and another deed, to Joseph S. Miles, cashier of the First National Bank of Mt. Carroll, and Miles put them in an envelope and made the following memorandum thereon in accordance with directions given to him at the time :

"*John Noble.*—The deeds within to be delivered to grantees after death of grantor.   The will to be delivered to the proper officers. All of said property to be held subject to the order of John Noble."

John Noble was a widower, and after he turned the farm over to his son the two lived there together.   Thomas employed the house-keeper, paid the grocery bills and made valuable improvements on the place, one of which was a large barn costing $3000.   He had the general management of the place and the father had very little to do with it, although he sold from the place a few dollars' worth of wood and sand.   For the purpose of paying for the improvements Thomas Noble borrowed money from his father, for which he gave his notes, which were unpaid and are a part of John Noble's estate.   It was the fixed purpose and intention of John Noble that his son Thomas should have the farm after his death, and Thomas was informed of that intention and of the making of the deed, and relied upon it.   John Noble told many different persons, including his other sons and at least one of his daughters, that he had made the deed; that he wanted Thomas to have the home farm and had left it to him, and that it was Thomas' property.   He expressed unfavorable opinions of the husbands of his daughters and

an intention not to leave any money or property to them. Whether the intention of the grantor in the deed has failed for want of a compliance with the law is the question in this case.

A delivery is essential to the validity of a deed, and to constitute a delivery the grantor must part with control over it and retain no right to reclaim or recall it. (*Hawes* v. *Hawes,* 177 Ill. 409; *Spacy* v. *Ritter,* 214 id. 266.) This deed was not delivered but was held by the custodian subject to the order of the grantor, who did not part with all control over it but retained the right to reclaim or recall it. The deed was intended as a testamentary disposition of the farm to take effect at the death of the grantor, and such a disposition can only be effected by an instrument in writing executed in conformity with the Statute of Wills. The instrument was not operative as a deed.

Counsel for appellant contends that if the deed was not operative as a conveyance the property was devised by the following clause of the will:

"*Fifth*—The remainder of my estate, both real and personal, excepting the home farm, containing 503½ acres, which I have heretofore deeded to my son Thomas Noble, I give, devise and bequeath to my sons Robert Noble, Thomas Noble and John W. Noble, share and share alike."

By previous provisions of the will he had disposed of his household goods and furniture and farm implements and made certain bequests to his children. The argument is, that the testator could not be presumed to intend to die intestate as to any part of his property, and that by the will he evinced an intention to devise the farm to his son Thomas, who would therefore take it by implication under the will. The rule on that subject is, that where a recital in a will is to the effect that the testator has devised something in another part of the will when in fact he has not done so, the erroneous recital may operate as a devise by implication of the same property, for the reason that it shows an intention

to devise the property by the will; but where the recital is to the effect that the testator has by some other instrument given to a certain person named in the recital, property, when in fact he has not done so, such a recital does not disclose an intention to give by the will, and in such a case resort must be had to the other instrument and not to the will. (*Hunt* v. *Evans,* 134 Ill. 496; *Benson* v. *Hall,* 150 id. 60; *Stodder* v. *Hoffman,* 158 id. 486.) The recital in this case is that the testator had deeded the home farm to his son Thomas, and the courts cannot give that recital the effect of a devise. Nor does the recital aid in establishing that there had been a valid delivery of the deed so as to make it operative as such. *Lange* v. *Cullinan,* 205 Ill. 365.

The deed did not operate as a conveyance of the property, and whether it must fail as a testamentary disposition of the farm is a question not involved under the pleadings in this case. It was in writing, signed by John Noble and attested by two witnesses, and almost any form of instrument which makes a disposition of property to take effect after the death of the maker is entitled to probate as a will if the conditions fixed by the Statute of Wills are complied with. At the conclusion of the will are these words: "revoking all former wills made.". But the will also expressly recognized the continued existence and validity of the conveyance. If an instrument in the form of a deed is executed and attested with the formalities prescribed by the statute, and confers no present interest but is revocable at pleasure and not to take effect until the death of the maker, it may be operative as a will. (30 Am. & Eng. Ency. of Law,— 2d ed.—576.) At any rate, the instrument could not be effective as a devise until admitted to probate, and the county court has exclusive jurisdiction for that purpose. (*Beatty* v. *Clegg,* 214 Ill. 34.) Where a disposition of property made by a written instrument is not to take effect until the death of the maker it is testamentary in character, and will remain subject to revocation or change during his life. (*Mas-*

*sey* v. *Huntington,* 118 Ill. 80.) And it is sufficient for the decision of this case that the deed was not delivered and did not take effect in the lifetime of the grantor.

The decree provided that a credit of $3000 should be allowed to Thomas Noble upon the notes held by him as executor of the estate of John Noble, and the decree declared that notes to that amount were thereby canceled and of no effect. Appellant insists that the allowance was insufficient compensation for his improvements, and that the court had no power to set off the value of the improvements against his notes or to cancel them. There was no basis in the pleadings for the provision. Thomas Noble in his answer and cross-bill set up the making of the improvements while in possession of the farm as the ground for insisting upon his ownership and the validity of the deed. There was evidence that he made the improvements, and where one of several tenants in common has made improvements upon the property, the court should, if possible, allot to him the portion improved without taking into account the value of the improvements. (*Louvalle* v. *Menard,* 1 Gilm. 39; *Dean* v. *O'Meara,* 47 Ill. 120.) If in the partition such a division cannot be made, the court will then allow to the one making the improvements remuneration for the increased value of the premises caused thereby. (*Mahoney* v. *Mahoney,* 65 Ill. 400.) That course was not pursued in this case, and the provision that notes of Thomas Noble inventoried by him in the county court should be canceled to the amount of $3000 was erroneous. If the portion of the premises on which the improvements are located should be set off to Thomas Noble the question of their value will not arise and is not now considered.

The decree is reversed and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed. The appellant will pay one-half the costs and the appellees Elizabeth Tipton and Ada Ostandere will pay the other half.            *Reversed and remanded.*